JOHN F. MEAD *vs.* ASA P. MORSE.

Middlesex.    November 26, 1906. — February 27, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract*, Performance and breach.    *Equity Jurisdiction*, To relieve against forfeiture.    *Interest*.

In an action on a bond to convey to the plaintiff certain land of which he was in possession, when the defendant had discharged certain attachments on the land, upon the plaintiff giving a note for a certain sum secured by a mortgage of the land, on which the plaintiff had built houses with money lent to him by the defendant to be included in the sum secured by the mortgage, with a provision that until the conveyance was made the plaintiff should pay interest and taxes and keep the buildings on the premises insured, there was evidence, including the plaintiff's testimony, that after the execution of the bond, the plaintiff being about to build an additional house on the land, the defendant agreed to lend him the money necessary for this purpose and agreed that the interest due from the plaintiff to the defendant should be treated as part of the money so lent and should be applied by the plaintiff directly to paying bills incurred in erecting the additional house, and that the amount should be included in a second mortgage to be given by the plaintiff to the defendant at the time of settlement, that after the additional house had been built under this arrangement the plaintiff by agreement with the defendant put the houses he had built into the defendant's possession and permitted him to receive the rents to apply upon the payment of interest and taxes, and that the amount so received by the defendant was in excess of all sums due for interest and taxes, when the plaintiff tendered a mortgage note for the amount due under the bond and demanded a conveyance of the land. The presiding judge refused to order a verdict for the defendant, and the jury returned a verdict for the plaintiff. The defendant upon the argument of exceptions relied on the following provision of the bond, under which he contended that he had taken possession of the land: "And it is expressly provided and agreed that upon failure by the obligee to perform the aforesaid conditions in regard to the payment of interest, taxes, and assessments, and in regard to insurance, waste and liability, the obligor may take possession of the premises and collect for his own use the rents and profits thereof, and this obligation shall be absolutely void." It did not appear

that this contention was made at the trial. The defendant also contended that the plaintiff had failed to pay the taxes on the land and the interest on the advances for the house last built by the plaintiff. The defendant never had asked for an accounting to fix the amount to be secured by the second mortgage for advances on this house. *Held*, that, if the defendant had contended at the trial that he had taken possession under the forfeiture clause of the bond, the question whether he had done so would have been one for the jury, and they could not have found for the defendant on this issue without finding that the plaintiff's testimony was untrue; moreover, that, if there had been such a forfeiture, it would have been one against which equity would give relief on compensation being made within a reasonable time, and that this principle would have governed an accounting, which the plaintiff had sought; that the verdict of the jury included a finding that the plaintiff had put into the hands of the defendant sufficient funds to pay all taxes and interest, and that, as to interest on the advances for the house last built, there could be no default until there had been an accounting to fix the amount to be secured by the second mortgage for those advances, for which the defendant never had been ready.

CONTRACT for alleged breach of a bond dated March 15, 1900, as modified by a subsequent oral agreement between the parties. Writ dated April 1, 1902.

The bond was as follows :

" Know all men by these presents that I, Asa P. Morse of Cambridge in the County of Middlesex, and Commonwealth of Massachusetts, am holden and stand firmly bound unto John F. Mead of said Cambridge in the sum of thirty-five thousand two hundred and fifty ($35250) dollars, to the payment of which to the said obligee, or his executors, administrators, or assigns, I hereby bind myself, my heirs, executors, and administrators.

" The condition of this obligation is such that whereas the said obligor has agreed to sell and convey unto the said obligee a certain parcel of real estate with the buildings thereon situated in said Cambridge, and bounded and described as follows, namely : [Description.]

" The same to be conveyed by a quitclaim deed of the said obligor, free from all incumbrances made or suffered by the obligor.

" And whereas for such deed and conveyance it is agreed that the said obligee shall pay the sum of thirty-five thousand two hundred and fifty dollars, of which one dollar has been paid this day, and the remainder is to be paid by the note of the said obligee, dated March 15, 1900, bearing interest at five per cent. per annum, payable quarterly, and secured by a power of sale

mortgage, in the usual form, upon the said premises, such note to be payable three years after the date thereof; and whereas it is agreed that until default in the performance of the terms of this obligation, the obligee may hold and enjoy the said premises and receive the rents and profits thereof; and that, upon the aforesaid sum, that is to say thirty-five thousand two hundred and fifty dollars, the obligee shall pay interest from the date of this obligation at the rate of five per cent. per annum payable quarterly, the first payment to be made in three months from the date of this obligation and that until default in the performance of the terms of this obligation, the obligee shall pay all taxes and assessments, to whomsoever laid or assessed, on the aforesaid premises or on account of any interest thereon, and shall keep the buildings on said premises insured against fire in a sum not less than $15,000.00 for the benefit of the obligor, and his executors, administrators, and assigns, in such form and in such companies as they shall approve; and shall not commit or suffer any strip or waste of the premises; and shall save the obligor harmless from loss on account of injury or damage to person or property through said estate or the condition or management thereof:

" Now therefore, if the said obligor shall, upon the tender by the said obligee of the aforesaid note and mortgage at any time within one month after the dissolution of the attachments at present subsisting upon said premises, and upon due performance by the obligee of the aforesaid conditions in regard to the payment of interest, taxes, and assessments, and in regard to insurance, waste, and liability, deliver unto the said obligee a good and sufficient deed as aforesaid, then this obligation shall be void, otherwise shall be and remain in full force and virtue.

" And it is expressly provided and agreed that upon failure by the obligee to perform the aforesaid conditions in regard to the payment of interest, taxes, and assessments, and in regard to insurance, waste and liability, the obligor may take possession of the premises and collect for his own use the rents and profits thereof, and this obligation shall be absolutely void. And it is agreed that all existing contracts relating to said estate are hereby cancelled.

" In witness whereof I hereunto set my hand and seal this 15th day of March A. D. 1900.

" Asa P. Morse (Seal)

" Witness Edw. E. Clark."

The subsequent oral agreement is stated in the opinion.

At the trial in the Superior Court before *Bond,* J. the jury returned a verdict for the plaintiff in the sum of $17,133.69 ; and the defendant alleged exceptions, raising the questions considered in the opinion where the material evidence and the course of the trial are described.

The case was submitted on briefs.

*C. G. Bancroft,* for the defendant.

*H. P. Harriman, J. L. Sheehan & H. E. Perkins,* for the plaintiff.

LORING, J.  This case comes up on an exception to a refusal to direct a verdict for the defendant, and on an exception to one portion of the judge's charge.  The case went to an auditor. The only evidence on the question of the defendant's liability came from the auditor's report and from the testimony of the plaintiff at the trial.  The defendant was an old man unable to testify before the auditor or at the trial.  He died less than three months after the verdict.  The administrators of his estate were allowed to come in and defend the action, the plaintiff having given his consent.  Most of the facts appear in the auditor's report.

The defendant was the owner of a lot of land in Cambridge, and the plaintiff was a builder.  Previous to March 15, 1900, the defendant had agreed to sell and the plaintiff had agreed to buy the land in question for $12,000.  The defendant also had advanced money to the plaintiff for the building of five houses on it, which then were completed.

On March 15, 1900, the plaintiff and the defendant had a settlement of all matters between them, and their rights each against the other were reduced to writing in the form of two bonds, one given by the plaintiff to the defendant and the other by the defendant to the plaintiff.

The bond given by the defendant to the plaintiff which, together with a subsequent oral agreement, is the foundation of the action now before us, provided in substance that the amount

due from the plaintiff to the defendant on March 15, 1900, was
$35,250 ; that the defendant was to convey the premises to the
plaintiff by a quitclaim deed free from all incumbrances made
or suffered by the defendant, and the plaintiff was to give back
a mortgage securing the $35,250 with interest at five per cent.
It appeared however that there were attachments on the prem-
ises in actions against the defendant. In consequence thereof
it was agreed (so far as is material here) that the plaintiff
should be let into possession of the premises and the rents and
profits thereof, paying the interest on the $35,250 and all taxes
and assessments, and keeping the premises insured in the sum
of $15,000 for the benefit of the defendant. The condition of
the bond was that the defendant, upon the tender of a mortgage
within one month after the dissolution of the attachments and
upon the due performance by the plaintiff of the terms of the
agreement just stated as to paying taxes and keeping the prop-
erty insured, should convey the land to the plaintiff.

In the May following the date of the bond the plaintiff began
the erection of a sixth house on the same lot of land. He testi-
fied in effect that he applied to the defendant for funds for the
erection of the additional house, and that the defendant agreed
to let him have for this purpose the interest money to be paid
under the mortgage for $35,250, and further sums in addition,
and that these advances for the sixth house were to be secured
by increasing the amount of the mortgage note provided for in
the bond of March 15, 1900, or by a second mortgage on the
premises. And it further was agreed that the plaintiff, in place
of actually paying over to the defendant the interest due on the
$35,250 and then receiving back these sums so paid as an ad-
vance for the erection of the sixth house, should apply them
directly to paying bills incurred in erecting that house and
account to the defendant accordingly.

The auditor found that the defendant advanced to the plain-
tiff for the sixth house $5,300, including the interest due on the
$35,250 and advances in addition thereto.

It appeared that the sixth house was completed in October,
1900.

The plaintiff testified at the trial that from March 15, 1900,
to November 6, 1900, a period of nearly eight months, he paid

no money to the defendant, the interest due during that period being included (as we understand it) in the $5,300 aforesaid; that on November 6, 1900, he began making payments to the defendant and continued down to December 16, 1901, a period of substantially thirteen months, and that during that period he paid $3,246; that he paid the taxes for the year 1900, but did not directly pay the taxes for the year 1901; that on January 24, 1902, by an arrangement which he made with the defendant, he put the defendant in possession of the houses on certain conditions; that on February 1, 1902, the defendant received the January rents, amounting to $402, making the total amount received by the defendant $3,648.

The plaintiff further testified that in February, 1902, he was told by the insurance agent that the defendant had cancelled the insurance on the building and said he had "thrown the plaintiff out."

Thereupon the plaintiff consulted an attorney, and on February 21, 1902, he called on the defendant and tendered a mortgage note for $35,250, dated March 15, 1900, indorsed interest paid to February 21, 1902. The plaintiff further testified that he had put into the sixth house much more than the interest due on the $35,250, and that "he understood that, if anything was due the defendant for interest when he came to take his deed and give his mortgages, it was to go into the additional mortgage; that the defendant, at the time he told the plaintiff he could take the rents and put them into the house instead of paying the defendant, said the interest could be put into the mortgage, and treating it that way, he did not owe any interest when he made the tender; that he did not owe the defendant anything toward taxes; that he had paid him more than enough to meet them; and that he could not say how much the defendant was indebted to him for over-payments, but it was considerable."

On this evidence the presiding judge refused to direct a verdict for the defendant. He instructed the jury, among other things, that before the plaintiff was entitled to a deed he was bound to pay the taxes and interest on the $35,250; that if on February 21, 1902, the plaintiff had not paid the defendant sufficient money including the rents collected after January 24,

1902, to pay the taxes and interest accrued on February 21, 1902, he could not recover.

He further instructed the jury that if there was an oral agreement as to advances for the sixth house, as the plaintiff asserts, and when he went to the defendant on February 21, 1902, he was " ready and willing to give the mortgage as he had agreed to give it, and upon an accounting with the defendant to give a mortgage for the sum that should be found due, and the defendant refused to have any arrangement with him, — to make any accounting with him, — then the plaintiff would be entitled to recover, if he had been ready and willing on his part to perform the agreement which he had made." To this part of the charge the defendant took an exception.

The first contention made by the defendant's counsel in support of these two exceptions is that the rights of the plaintiff under the bond were terminated before the tender of February 21, 1902.

In support of this contention he relies upon the concluding clause in the defendant's bond, which is in these words: " And it is expressly provided and agreed that upon failure by the obligee to perform the aforesaid conditions in regard to the payment of interest, taxes, and assessments, and in regard to insurance, waste and liability, the obligor may take possession of the premises and collect for his own use the rents and profits thereof, and this obligation shall be absolutely void."

No such contention appears to have been made at the trial. If the point had been taken at the trial, it would have been a question for the jury whether the defendant took possession under this clause of the bond. The jury could not find that he did enter under that clause without finding that the plaintiff's testimony as to the conditions under which the defendant took possession was not true.

It is not necessary to go further, but it ought to be pointed out that the clause here relied on by the defendant is a clause by which valuable rights of the plaintiff would be forfeited by the defendant's acting under it, and therefore it is one against which equity would give relief on compensation being made within a reasonable time; see for example *Gordon* v. *Richardson,* 185 Mass. 492, and cases cited; and this would have governed the

rights of the parties when they met on February 21, 1902, and the accounting which the plaintiff was ready to take up had this power been taken by the defendant.

The defendant's next contention is that the plaintiff had failed to pay the taxes on the land and interest on the advances for the sixth house. So far as the unpaid taxes are concerned the jury, under the charge of the presiding judge, could not find for the plaintiff without finding that the defendant had been put in funds by the plaintiff to pay those taxes and that interest.

The defendant never had asked for an accounting to fix the amount to be secured by mortgage for advances on the sixth house, and until that was done no interest on that sum could be said to be in default. It would seem pretty clear that the reason for the defendant's putting this off was because he had not discharged, and did not wish to discharge, the attachments as he had agreed to do.

The last argument is that there is no evidence that the plaintiff's willingness to give the other mortgage ever was communicated to the defendant. On the evidence already stated we are of opinion that the jury were warranted in finding that it was impliedly, if not expressly, communicated to him.

*Exceptions overruled.*